IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONALD RUTLEDGE, *et al.*,

      Plaintiffs,

    vs.                         Civil Action 2:12-CV-159
                                       Judge Smith
                                       Magistrate Judge King

CLAYPOOL ELECTRIC, INC.,
*et al.*,

      Defendants.

<u>REPORT AND RECOMMENDATION</u>

This matter is now before the Court on plaintiffs' *Motion to Conditionally Certify the Case as a Collective Action*, Doc. No. 8 ("*Motion to Conditionally Certify*") and on *Defendants' Motion to Strike Certain Paragraphs of Plaintiffs' Affidavits*, Doc. No. 13 ("*Defendants' Motion to Strike*"), which were referred to the undersigned for consideration and a *Report and Recommendation*. *Order*, Doc. No. 21. Because it is recommended that the *Motion to Conditionally Certify* be denied, it is also recommended that plaintiffs' *Motion for an Order Equitably Tolling the FLSA Statute of Limitations for Potential Opt-In Plaintiffs*, Doc. No. 25, be denied as moot.

I.    **PLAINTIFFS' ALLEGATIONS AND CLAIMS**

Defendant Claypool Electric, Inc. ("Claypool Electric"), an Ohio corporation, has an annual volume of business exceeding $500,000. *Collective Action Complaint*, Doc. No. 1, ¶¶ 12-13 ("*Complaint*"). During all relevant times, Claypool Electric employed individuals who performed construction and clerical work, including ordering

construction materials by mail, phone or fax; accepting payment for services from customers; and performing work on federally funded construction products. *Id.* at ¶ 13.

Defendant Charles C. Claypool ["defendant Claypool"] was, at all times relevant to the *Complaint*, the CEO of Claypool Electric and maintained a significant ownership interest in Claypool Electric. *Id.* at ¶ 16. Defendant Claypool[1] controlled day-to-day business functions such as setting salaries and pay scales of Claypool Electric's employees, which included plaintiffs Donald Rutledge, Lee Whitlatch and Charles Cox. *Id.* at ¶¶ 3, 6, 9, 16. Plaintiff Rutledge worked initially for defendants as an apprentice electrician and later as a journeyman electrician construction worker. *Id.* at ¶ 3. Plaintiff Whitlatch first worked for defendants as a journeyman electrician construction worker and later as a foreman construction worker. *Id.* at ¶ 6. Plaintiff Cox worked as an apprentice construction worker. *Id.* at ¶ 9.

On February 21, 2012, plaintiffs filed this collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") on behalf of themselves and all other similarly situated individuals against defendants for unpaid wages and overtime pay. Plaintiffs also assert a claim under O.R.C. § 4113.15 against Claypool Electric. *Complaint*, ¶¶ 59-62. Plaintiffs define the three collective classes that they seek to represent as follows:

> a.   All current and former Claypool Electric, Inc. employees employed in the foreman or similar classifications who worked in excess of 40 hours per

---

[1]The Court will refer to Claypool Electric and defendant Claypool, collectively, as "defendants."

week and were not compensated for each and every hour worked in excess of 40 hours per week at one and one-half times his regular rate of pay; and

b.   All current and former Claypool Electric, Inc. employees that were paid in "comp time," i.e., received paid time off, in lieu of being compensated for each and every hour worked in excess of 40 hours per workweek at one and one-half times his regular rate of pay; and

c.   All current and former Claypool Electric, Inc. employees whose overtime rate of pay was not calculated by using the weighted average of all hourly rates paid in one workweek.

*Id.* at ¶ 20.

## II.   *MOTION TO CONDITIONALLY CERTIFY AND DEFENDANTS' MOTION TO STRIKE*

### A.   Standard for Conditional Certification

Plaintiffs move to conditionally certify this case under 29 U.S.C. § 216(b), which permits employees, under some circumstances, to collectively sue an employer for unpaid overtime pay. *See*, *e.g.*, *Harrison v. McDonald's Corp.*, 411 F. Supp.2d 862, 864-65 (S.D. Ohio 2005). Section 216(b) specifically provides:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover [this] liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b). The United States Court of Appeals for the Sixth Circuit has construed Section 216(b) as establishing two requirements for a representative action:

> 1) the plaintiffs must actually be "similarly situated," and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action. 29 U.S.C. § 216(b); *Hoffmann-La Roche, Inc., v. Sperling*, 493 U.S. 165, 167-68,

> 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). Similarly
> situated persons are permitted to "opt into" the suit. This
> type of suit is called "collective action." It is
> distinguished from the opt-out approach utilized in class
> actions under Fed. R. Civ. P. 23.

*Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006).

Certification in FLSA collective actions often follows two steps:

conditional and final certification. *Harrison*, 411 F. Supp.2d at 864-

65. *See also Frye v. Baptist Mem. Hosp., Inc.*, No. 11-5648, 2012 U.S.

App. LEXIS 17791, at *6 (6th Cir. Aug. 21, 2012). The first stage,

conditional certification, occurs at the beginning of the discovery

process and the second stage, final certification, occurs after all

class plaintiffs have decided whether to opt-in and after all or most

discovery has concluded. *Comer*, 454 F.3d at 546; *White v. Baptist

Mem'l Health Care Corp.*, No. 11-5717, 2012 U.S. App. LEXIS 2275, at

*18 (6th Cir. Nov. 6, 2012) (citing *Comer*, 454 F.3d at 546).

 "District courts use a 'fairly lenient standard' that 'typically

results in conditional certification of a representative class' when

determining whether plaintiffs are similarly situated during the first

stage of the class certification process." *White*, 2012 U.S. App.

LEXIS 2275, at *18 (citing *Comer*, 454 F.3d at 547). If conditional

certification is granted, the putative class members are given notice

and an opportunity to opt in to the action. *See*, *e.g.*, *Heaps v.

Safelite Solutions*, LLC, No. 2:10-cv-729, 2011 U.S. Dist. LEXIS

150313, at *4-5 (S.D. Ohio Dec. 22, 2011). However, certification at

this stage "is conditional and by no means final." *Comer*, 454 F.3d at

546 (internal quotation marks and citations omitted).

 The second stage, or final certification, imposes a "stricter

standard[,]" *id.* at 547, "because it occurs near the end of

discovery." *Frye*, 2012 U.S. App. LEXIS 17791, at *7. At this stage, "trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. "Plaintiffs generally must produce 'more than just allegations and affidavits' demonstrating similarity in order to achieve final certification." *Frye*, 2012 U.S. App. LEXIS 17791, at *6. In addition, at this stage, a defendant may, if appropriate, file a motion to decertify. *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011).

   **B.   *Defendants' Motion to Strike***

   In support of their *Motion to Conditionally Certify*, plaintiffs offer the *Affidavit of Lee Whitlatch* ("*Whitlatch Affidavit*"), the *Affidavit of Charles Cox* ("*Cox Affidavit*") and the *Affidavit of Donald Rutedge* [sic] ("*Rutledge Affidavit*"), attached as *Exhibits 1*, *2* and *3*, respectively, to the *Motion to Conditionally Certify*. Defendants seek to strike certain paragraphs from each of these affidavits, which the Court will address in turn.

      **1.   The *Whitlatch Affidavit***

         **a.   Hearsay**

   Defendants move to strike Paragraphs 5 and 6 from the *Whitlatch Affidavit*, arguing that these statements are based on impermissible hearsay. *Defendants' Motion to Strike*, pp. 1-3; *Defendants' Reply in Support of Its Motion to Strike Certain Paragraphs of Plaintiffs' Affidavits*, Doc. No. 17, pp. 1-4 ("*Reply in Support of Motion to Strike*"). Defendants note that this Court has previously determined that it may consider only admissible evidence in connection with a §

216(b) motion.  *Defendants' Motion to Strike*, pp. 2-3 (citing, *inter alia*, *Harrison v. McDonald's Corp.*, 411 F. Supp.2d 862; *Landsberg v. Acton Enters.*, No. C2-05-500, 2006 U.S. Dist. LEXIS 90716 (S.D. Ohio Dec. 15, 2006)).  Plaintiffs oppose *Defendants' Motion to Strike*, arguing that none of the statements in any of the affidavits constitute inadmissible hearsay.  Plaintiffs' *Opposition to Motion to Strike Certain Paragraphs of Plaintiffs' Affidavits*, Doc. No. 16 ("*Opposition to Motion to Strike*").[2]

Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Defendants are correct that this Court has previously held that "hearsay statements cannot be considered in connection with a Plaintiff's § 216(b) motion for determining whether other employees are similarly situated." *Harrison*, 411 F. Supp.2d at 866.  *See also id.* ("Courts . . . have repeatedly held that only admissible evidence may be considered in connection with a § 216(b) motion."); *Landsberg*, 2006 U.S. Dist. LEXIS 90716, at *12-14 (affirming recommendation that, *inter alia*, excluded inadmissible hearsay evidence at conditional certification stage).  Accordingly, this Court will not consider hearsay evidence in

---

[2] Plaintiffs also purport to "incorporate their Reply in Support of their Motion for Conditional Certification [Doc. No. 15] to the extent relevant to the Court ruling upon Defendants' Motion to Strike." *Opposition to Motion to Strike*, p. 1 n.1.  Other than this general reference, plaintiffs do not direct the Court to any particular page or argument in their reply in support of the motion to conditionally certify, which contains 20 pages of briefing and 27 pages of exhibits.  Although plaintiffs apparently expect the Court to wade through these arguments and documents looking for support for plaintiffs' opposition to *Defendants' Motion to Strike*, the Court declines to do so.  The Court will therefore limit its consideration to the briefing offered specifically in connection with *Defendants' Motion to Strike*.

determining whether plaintiffs are similarly situated to putative class members.

In reaching this decision, this Court is mindful of plaintiffs' argument that some courts do consider hearsay evidence at the conditional certification stage. *Opposition to Motion to Strike*, pp. 4-5 (citing *Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561, 565 (S.D. N.Y. 2012); *Winfiend v. Citibank, N.A.*, No. 10 Civ. 5950, 2012 U.S. Dist. LEXIS 16449, at *11-12 (S.D. N.Y. Jan. 27, 2012)). *See also Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246-47 (W.D. Mich. 2011). However, plaintiffs have nevertheless failed to persuade this Court that its prior decisions rejecting hearsay at this stage were in error. *See*, *e.g.*, *Landsberg*, 2006 U.S. Dist. LEXIS 90716, at *13 ("[N]umerous decisions support the still-lenient position that limits consideration to admissible evidence in connection with conditional certification of a collective action under § 216(b).") (collecting cases). *See also Kerr v. Hurd*, 694 F. Supp. 2d 817, 843 (S.D. Ohio 2010) ("In the absence of supervening case authority from the Supreme Court or the Court of Appeals, this Court is bound, under the doctrine of *stare decisis*, to follow decisions of its own judges.").

Turning to the merits of *Defendants' Motion to Strike*, plaintiff Whitlatch, an hourly paid crew leader[3] since March 2011, avers in pertinent part:

> 5.    To the best of my knowledge, all employees in the crew leader job classification are required to perform the same additional, unpaid duties that I am.
>
> 6.    My knowledge is based upon working with the other Crew

---

[3]Plaintiff Whitlatch believes that a "crew leader" is "another name for a 'foreman' in the industry." *Whitlatch Affidavit*, ¶ 1.

7

> Leaders, I conversed with them concerning all of us
> staying after the work day, taking home prints to lay
> out work, meet with the bosses to pick up materials
> and tools, and speaking with superiors on the phone
> after hours.

*Whitlatch Affidavit*, ¶¶ 5-6.  Defendants argue that paragraph 6
contains hearsay because it is based on plaintiff Whitlatch having
"conversed with [other unidentified Crew Leaders]" about alleged tasks
performed that day.  *Defendants' Motion to Strike*, p. 3.  Because the
"knowledge" in paragraph 5 is based on the hearsay contained in
paragraph 6, defendants contend that both paragraphs should be
stricken.  *Id*.  Plaintiffs disagree, arguing that the statements in
paragraphs 5 and 6 not hearsay under Fed. R. Evid. 801(d)(2)(D)[4]
because it was defendants' employees who made these statements to
plaintiff Whitlatch and because the challenged statements were based
on plaintiff Whitlatch's perceptions "and concerned matters within and
relative to the employees' employment[.]" *Opposition to Motion to
Strike*, pp. 2, 4.  In reply, defendants argue that (1) *Harrison* and
*Landsberg* concluded that similar statements were inadmissible hearsay
and, in any event, (2) paragraphs 5 and 6 do not meet the requirements
of Fed. R. Evid. 801(d)(2)(D) because plaintiffs have not shown that
those statements were made within the scope of the employees'
employment relationship during the existence of such a relationship.
*Reply in Support of Motion to Strike*, pp. 2-5.

Defendants' arguments are well-taken.  In *Harrison*, the defendant
employer moved to strike portions of affidavits offered by plaintiff

---

[4]Under 801(d)(2)(D), a statement is not hearsay if "[t]he statement is
offered against the opposing party and . . . was made by the party's agent or
employee on a matter within the scope of that relationship and while it
existed."

at the conditional certification stage. *Harrison*, 411 F. Supp.2d at 865.  In particular, the defendant employer argued that the court should strike as inadmissible hearsay an affiant's statement that "I frequently overheard several of my co-workers complain about shortages in their paychecks[.]"  *Id*. at 866-67.  The plaintiff argued unsuccessfully that this statement was admissible under the Fed. R. Evid. 803(3) hearsay exception.[5]  *Id*. at 866-67.  The *Harrison* court rejected the suggestion that this statement was admissible simply because it was based on the affiant's "'personal observations' of his co-workers' complaints.  The mere fact that he [the affiant] was present when the complaints were made does not make the statements admissible."  *Id*.  The court concluded that plaintiff's "reasoning, taken to its logical conclusion, would completely swallow the hearsay rule."  *Id*. at 867.

The *Harrison* court, however, went on to conclude that another statement in the same affidavit was admissible as an admission of a party opponent under Fed. R. Civ. P. 801(d)(2)(D).  *Id*.  Specifically, the affiant averred that "[s]everal of my co-workers advised me that this practice [manually reducing the number of hours that employees had reported working] frequently occurred, including one of the Restaurant managers, Carol Farris."  *Id*.  According to the *Harrison* court, this statement implied that Ms. Farris was a manager at the

_____

[5]This exception provides that

A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

time that the affiant worked there.  *Id*.  The court also presumed that "statements concerning payment of employees are matters within the scope of Ms. Farris's agency or employment relationship, and matters about which she, as a manager, would have personal knowledge."  *Id*. In so finding, the court concluded that the affiant's statement was based on an adequate foundation and was admissible as an admission of a party opponent under Fed. R. Civ. P. 801(d)(2)(D).  *Id*.

In *Landsberg*, this Court affirmed a magistrate judge's recommendation excluding inadmissible hearsay evidence contained in an affidavit.  *Landsberg*, 2006 U.S. Dist. LEXIS 90716, at *11-14.  In that case, the affidavit of the plaintiff, a store manager, contained various statements made by other managers regarding the defendant employer's pay policy.  *Landsberg v. Acton Enter., Inc.*, No. 2:05-cv-0500, 2006 U.S. Dist. LEXIS 23439, at *1-2, 10 (S.D. Ohio Mar. 22, 2006), *adopted and affirmed by Landsberg*, 2006 U.S. Dist. LEXIS 90716. The *Landsberg* court concluded that these statements, which plaintiff recalled from a dinner meeting with other managers, amounted to inadmissible hearsay that could not be used to determine whether employees were similarly situated under Section 216(b).  *Id*. at *10-11.

Here, plaintiff Whitlatch's "knowledge," as claimed in Paragraph 5, that defendant requires other employees in the "crew leader job classification" to perform certain duties without compensation comes from plaintiff Whitlatch's conversations with "other Crew leaders" about the performance of these duties.  *Whitlatch Affidavit*, ¶ 6. Without more, these statements appear to be inadmissible hearsay. Although plaintiffs assert that the statements are not hearsay under

Rule 801(d)(2)(D), they offer no other evidence to support this assertion.  In determining whether or not Rule 801(d)(2)(D) applies, the Court must determine "whether there is evidence that the unidentified declarants were speaking on a matter within the scope of their employment." *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012).  In making this determination, the "statement must be considered but does not by itself establish . . . the existence or scope of the relationship under [Rule 801(d)(2)(D)]."  Fed. R. Evid. 801(d)(2).  "Outside evidence sufficient to satisfy Rule 801(d)(2)(D)'s scope requirement could come from the 'circumstances surrounding the statement, such as the identity of the speaker [or] the context in which the statement was made.'"  *Back*, 694 F.3d at 578 (quoting Fed. R. Evid. 801 advisory committee's notes, 1997 Amendment).  The party seeking to admit statements under Rule 801(d)(2)(D) bears the burden of proving admissibility.  *Liadis v. Sears, Roebuck & Co.*, No. 01-3230, 47 Fed. Appx. 295, at *303 (6th Cir. Sept. 17, 2002) (citing *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275 (6th Cir. 1986)).

    As in *Landsberg*, there are no circumstances in this case establishing that the statements about non-payment for performing certain duties fell within the scope of the unidentified crew leaders' duties.  Stated differently, nothing in the record permits the Court to presume that payroll practices or procedures are matters of which crew leaders, *i.e.*, foremen, would have personal knowledge.  *Cf.* *Whitlatch Affidavit*, ¶¶ 2 (listing unpaid duties that include "review plans, review prints, and plan work. . . . and provide telephonic updates to superiors"), 6 (describing alleged unpaid after work hours

as "taking home prints to lay out work, meet with the bosses to pick up materials and tools, and speaking with superiors on the phone after hours"). Because it is not apparent that these employees were hired to describe their work duties, their statements in that regard did not fall within the ambit of Rule 801(d)(2)(D), Paragraphs 5 and 6 amount to impermissible hearsay.

Plaintiffs' reliance on *Lacy v. Reddy Elec. Co.*, No. 3:11-cv-52, 2011 U.S. Dist. LEXIS 142050, at *11-13 (S.D. Ohio Dec. 9, 2011) does not militate a different result. *See Opposition to Motion to Strike*, pp. 1-2. Plaintiffs represent that the *Lacy* court "consider[ed] plaintiffs' observations of other employees' work." *Id.* at 2. However, plaintiffs make no effort to explain how the facts and evidence in *Lacy* are similar to this case. Indeed, the *Lacy* court relied on deposition testimony and exhibits, not the plaintiffs' declarations,[6] to support its conclusion that the plaintiffs made a "modest factual showing" that they are similarly situated to other employees. *Lacy*, 2011 U.S. Dist. LEXIS 142050, at *13-14. Moreover, documentary evidence supported at least one portion of a plaintiff's testimony. *Id.* at *14-15 (citing to deposition exhibit). Based on the present record, the Court cannot say that *Lacy* requires consideration of what is otherwise hearsay contained in Paragraphs 5 and 6 of the *Whitlatch Affidavit*, particularly in light of *Harrison* and *Landsberg*. Accordingly, the Court will disregard Paragraphs 5 and 6 of the *Whitlatch Affidavit* when determining whether employees are

---

[6]The *Lacy* court specifically rejected the plaintiffs' declarations that addressed whether the plaintiffs were similarly situated, finding those declarations to be conclusory. *Id.* at *11-12.

similarly situated.

    **b.**    **Speculation**

Defendants also move to strike Paragraph 11 from the *Whitlatch Affidavit* as speculative. *Defendants' Motion to Strike*, pp. 3-4. Speculative statements offered in connection with a Section 216(b) motion may not form a basis of conditional certification. *See*, *e.g.*, *Landsberg*, 2006 U.S. Dist. LEXIS 90716, at *3; *Harrison*, 411 F. Supp.2d at 871.

In paragraph 11, plaintiff Whitlatch avers:

11.    I know that at least 3-4 other employees working on the River Valley Stadium Project that were required to work hours in excess of 40 hours per workweek and were required to accept compensatory time in lieu of payment in legal tender for each and every hour they worked in excess of 40 per workweek.

*Whitlatch Affidavit*, ¶ 11. Defendants argue that this paragraph is speculative and should be disregarded because it "does not evidence any basis upon which to conclude that Whitlatch had personal knowledge of others' compensation[.]" *Defendants' Motion to Strike*, p. 5.

This Court disagrees. In statements unchallenged by defendants, plaintiff Whitlatch first avers that "there are at least 20 employees classified as crew leaders at Claypool Electric[.]" *Whitlatch Affidavit*, ¶ 4. Plaintiff Whitlatch also avers that, as a crew leader, he "worked on one project, the River Valley Stadium Project, and my additional, unpaid duties, did not change depending upon the project to which I was assigned." *Id*. at ¶ 3. While plaintiff Whitlatch was employed by Claypool and was working on the River Valley Stadium Project, his project manager advised him that "Claypool was eliminating any and all overtime payments for work." *Id*. at ¶ 7.

13

Plaintiff avers that, notwithstanding this change, "I was required to work hours in excess of 40 hours per workweek, but was not compensated in legal tender for that time[,]" and instead worked for compensatory time. *Id*. at ¶¶ 8-9. Reading Paragraph 11 in light of these other statements, the clear implication is that plaintiff Whitlatch knows from personal experience and observation while working on the River Valley Stadium Project that other employees on that project also worked in excess of 40 hours of week. Moreover, reading the *Whitlatch Affidavit* as a whole, the Court understands that plaintiff's knowledge that those other employees were required to accept compensatory time in lieu of monetary compensation arises from the project leader's statement that Claypool had eliminated all payment for overtime. *See id*. at ¶ 7. Accordingly, the Court rejects defendants' assertion that Paragraph 11 of the *Whitlatch Affidavit* is speculative.

### 2. The *Cox Affidavit*

Defendants also argue that Paragraph 6 of the *Cox Affidavit* is speculative. *Defendants' Motion to Strike*, p. 5. In Paragraph 6, plaintiff Cox avers:

> 6. I know of at least one other employees [sic] working on the South Gallia High School Athletic Complex Project who were [sic] required to work hours in excess of 40 hours per workweek and were required to accept compensatory time in lieu of payment in legal tender for each and every hour they worked in excess of 40 per workweek[.]

*Cox Affidavit*, ¶ 6.

As it did in connection with Paragraph 11 of the *Whitlatch Affidavit*, the Court rejects defendants' contention that Paragraph 6 of the *Cox Affidavit* is based on mere speculation. Plaintiff Cox, an

apprentice electrician construction worker, worked on the South Gallia High School Athletic Complex Project while employed by Claypool. *Cox Affidavit*, ¶¶ 1-2. He avers that, while working on that project, his project manager advised him that "Claypool was eliminating any and all overtime payments for work." *Id*. at ¶ 2. Plaintiff Cox avers that he nevertheless "was required to work hours in excess of 40 hours per workweek, but was not compensated in legal tender for that time" and instead worked for compensatory time. *Id*. at ¶¶ 3-4. Taking the *Cox Affidavit* as a whole, the clear implication is that plaintiff Cox knows from personal experience and observation while working on the South Gallia High School Athletic Complex Project that other employees also worked more than 40 hours a week. Moreover, the Court presumes that plaintiff's knowledge that those other employees were required to accept compensatory time in lieu of monetary compensation arises from the project leader's statement that Claypool had eliminated all payment for overtime. *See id*. at ¶ 2. Accordingly, the Court rejects defendants' assertion that Paragraph 6 of the *Cox Affidavit* is speculative.

### 3. The *Rutledge Affidavit*

Finally, defendants seek to strike Paragraphs 3 and 10 of the *Rutledge Affidavit*. *Defendants' Motion to Strike*, pp. 5-6. In those paragraphs, plaintiff Rutledge avers the following in support of plaintiffs' allegations that the overtime rate of pay for a certain class of employees was not calculated by using the weighted average of all hourly rates of pay in one work week:

> 3. Other Weighted Average Class SSEs[7] and I occasionally were paid different rates for different types of work during workweeks in which we worked in excess of forty hours.
>
> \*                          \*                          \*
>
> 10. I also spoke with several other current and former employees of Claypool Electric who confirmed they also were paid overtime at their private-hour rate, instead of at some averaged rate based upon all their different wage rates within that workweek.

*Rutledge Affidavit*, ¶¶ 3, 10. In moving to strike these paragraphs, defendants contend that Paragraph 10 contains inadmissible hearsay and that Paragraph 3 is based on that hearsay. *Defendants' Motion to Strike*, pp. 5-6. Plaintiff disagrees that these paragraphs are inadmissible arguing, first, that defendants' challenges to these statements are "mooted by the fact that the Defendants admitted, in their Answer, that its' [sic] policy is to pay different rates for both prevailing wage and non prevailing wage work. (Doc. 5, Answer, at ¶[] 52, 53.)" *Opposition to Motion to Strike*, p. 3. Plaintiffs next contend that, to the extent that plaintiff Rutledge's knowledge was based upon the conversations referenced in Paragraph 10, those conversations "are not, by definition, hearsay because they were made by employees of Defendants and concerned matters related to their employment." *Id*. Plaintiffs also apparently take the position that the statements about pay rates are not hearsay because they "were based upon perception[.]" *Id*. at 4.

Plaintiffs' arguments are not well-taken. First, even if plaintiffs were correct that defendants' *Answer*, Doc. No. 5,

---

[7]The *Rutledge Affidavit* does not define "SSEs," but the Court, after reviewing the record, understands that plaintiffs intend that term to refer to "similarly situated employees." *See*, *e.g.*, *Complaint*, ¶ 26.

corroborates plaintiff Rutledge's statements in Paragraphs 3 and 10, that corroboration does not moot defendants' challenges to the *Rutledge Affidavit*. Stated differently, the existence of other evidence, which is not even referenced in the *Rutledge Affidavit*, does not cure the hearsay deficiencies, if they exist, in Paragraphs 3 and 10.

It appears, as defendants contend, that plaintiff Rutledge's knowledge of the facts referred to in Paragraph 3 (regarding the pay rate of other employees) is based on conversations described in Paragraph 10. Therefore, the Court must determine whether the statements in Paragraph 10 constitute hearsay.

Plaintiffs urge this Court to conclude that those statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(D). *Opposition to Motion to Strike*, pp. 3-4. However, as with the *Whitlatch Affidavit* discussed *supra*, plaintiff offers no evidence to support their position. More specifically, nothing in the *Rutledge Affidavit* suggests that the "current or former employees of Claypool Electric" referred to in Paragraph 10 were speaking on matters that fell within the scope of their employment. *See Back v. Nestlé USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012). Indeed, if the conversation took place with former Claypool employees, those individuals were certainly not acting with the scope of their employment because they were no longer employed by Claypool. Moreover, nothing in the record permits the Court to presume that defendants' payroll practices or pay rates are

17

matters about which these unidentified[8] current employees would have personal knowledge.  Because plaintiffs have not established that the challenged statements fell within the scope of employment, and therefore not within the ambit of Rule 801(d)(2)(D), Paragraph 3 – to the extent that it relates to other employees – and Paragraph 10 in its entirety amount to impermissible hearsay.

Finally, as previously noted, plaintiffs argue that the statements referring to conversations that plaintiff Rutledge had with other employees are not hearsay because they were "based upon perception" of those conversations.  That argument is equally unavailing.  "The mere fact that [plaintiff Rutledge] was present when the [other employees'] complaints were made does not make the statements admissible." *Harrison*, 411 F. Supp.2d at 866-67.  As this Court previously observed, "[t]his reasoning, carried to its logical conclusion, would completely swallow the hearsay rule." *Id.* at 867.  Accordingly, the Court will disregard Paragraph 3 to the extent that it refers to other employees[9] and will disregard Paragraph 10 of the *Rutledge Affidavit* when determining whether employees are similarly situated.

### C. *Motion to Conditionally Certify*

[8]Plaintiff Rutledge avers that he cannot disclose the names of the current and former employees "because I expect they would likely be disciplined for violating that Company policy [that contains a strict pay secrecy clause], regardless of its likely illegality under the National Labor Relations Act." *Rutledge Affidavit*, ¶ 11.  Defendants object strenuously to this statement, disagreeing with plaintiffs' characterization of such a policy and arguing at length why the policy, if it exists, is irrelevant to the present issues. *Reply in Support of Motion to Strike*, pp. 5-7.  Having concluded that a portion of Paragraph 3 and Paragraph 10 are inadmissible, the Court need not, and does not, address the parties' dispute at this time.

[9]In other words, the Court will consider the portion of Paragraph 3 that avers that plaintiff Rutledge was paid different rates for different types of work during the workweeks.

Having determined what evidence the Court may consider at this stage, the Court turns to the merits of the *Motion to Conditionally Certify*. As discussed *supra*, plaintiffs have the burden of showing at the conditional certification stage that 1) the plaintiffs are actually "similarly situated," and "2) all plaintiffs must signal in writing their affirmative consent to participate in the action." 454 F.3d at 546. Here, plaintiffs seek to conditionally certify their claims as a collective action on behalf of three classes.

**1.  Similarly situated**

Although neither the statute nor the Sixth Circuit has specifically defined the meaning of "similarly situated" employees, the Sixth Circuit has stated that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 585 (6th Cir. 2009).

"District courts use a 'fairly lenient standard' that 'typically results in conditional certification of a representative class' when determining whether plaintiffs are similarly situated during the first stage of the class certification process." *White v. Baptist Mem'l Health Care Corp.*, No. 11-5717, 2012 U.S. App. LEXIS 2275, at *18 (6th Cir. Nov. 6, 2012) (citing *Comer*, 454 F.3d at 547). Although courts are split on what this showing requires, *see*, *e.g.*, *Harrison v. McDonald's Corp.*, 411 F. Supp.2d at 865(collecting cases), this Court has previously held that it should not grant conditional certification "unless the plaintiff presents some evidence to support her allegations that others are similarly situated[,]" *id.* at 868, which

19

requires only a "modest factual showing." *Id.* at 865 (citing *Olivo v. GMAC Mortgage Co.*, 374 F. Supp.2d 545, 548 (E.D. Mich. 2004)).  In other words, "'plaintiffs must establish a colorable basis for their claim that a class of similarly situated' plaintiffs exists." *Id.* (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266 (D. Minn. 1991)).

This type of evidence includes "'factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; whether evidence of a widespread discriminatory plan was submitted, and whether as a matter of sound class management, a manageable class exists.'" *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011) (quoting *Heaps v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2011 U.S. Dist. LEXIS 150313, at *4-5 (S.D. Ohio Dec. 22, 2011)).  In addition, this Court has previously concluded that, at this lenient first stage, "'the named plaintiff[s] need only show that [their] position[s] [are] similar, not identical, to the positions held by the putative class members.'" *Lewis*, 789 F. Supp. 2d at 867-68 (quoting *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).  Finally, at this first stage, "courts 'do not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations.'" *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 U.S. Dist. LEXIS 39794, at *12 (E.D. Mich. Mar. 23, 2012) (citing *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010)).

With this standard in mind, the Court turns to plaintiffs' proposed classes.

### a. Crew leader class

Section 207(a)(1) of the FLSA "'provides that employers may not require employees to work more than forty hours per workweek unless those employees receive overtime compensation at a rate of not less than one-and-one half times their regular pay[.]'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (quoting *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 626 (6th Cir. 2009)). In the instant case, plaintiffs first seek to conditionally certify a class of crew leaders (foremen) "or similar classifications who worked in excess of 40 hours per week and were not compensated for each and every hour worked in excess of 40 hours per week at one and one-half times his regular rate of pay [("crew leader class").]" *Complaint*, ¶ 20. In attempting to make the requisite modest factual showing that plaintiffs are similarly situated to such potential class members, plaintiffs offer the *Whitlatch Affidavit*. According to plaintiff Whitlatch, a crew leader, he "worked a number of hours at the direction of and for the benefit of Defendants without being compensated." *Whitlatch Affidavit*, ¶ 2. On average, plaintiff Whitlatch worked approximately 5 to 6 hours per week without pay. *Id*. Claypool Electric required plaintiff Whitlatch to continue to work in excess of 40 hours per week even after his project manager advised him that Claypool Electric was eliminating overtime payment. *Id*. at ¶¶ 7-8. Even though Claypool Electric required plaintiff Whitlatch to accept compensatory time at the rate of one hour of paid leave per one hour of overtime work, plaintiff Whitlatch avers that he actually received only approximately 12 hours of paid leave for 20 hours of overtime work. *Id*. at ¶¶ 9-10.

21

Although the *Whitlatch Affidavit* is evidence that plaintiff
Whitlatch was not paid at one and one-half times his regular rate of
pay for time worked in excess of 40 hours as a crew leader, it does
not support a conclusion that there were other similarly situated crew
leaders.  For example, plaintiff Whitlatch avers that he knows that
"at least 3-4 other employees working on the River Valley Stadium
Project [] were required to work in excess of 40 hours per workweek
and were required to accept compensatory time in lieu" of overtime
payment.  *Id*. at ¶ 11.  However, it is not clear whether these
unidentified "3-4 other employees" are crew leaders.  To assume that
these unnamed employees are crew leaders would amount to nothing more
than speculation, which is not a permissible basis for conditional
certification.  *See*, *e.g.*, *Landsberg*, 2006 U.S. Dist. LEXIS 90716, at
*3; *Harrison*, 411 F. Supp.2d at 871.  Moreover, defendants offer sworn
statements from ten crew leaders who state that they "have not been
directed, required, pressured or encouraged by anyone at Claypool to
work without" accurately reporting all of the time worked.  *Exhibit 2*,
pp. 1-10.  Based on the present record, these sworn statements are
uncontroverted.  Accordingly, plaintiffs have not made even a modest
factual showing that plaintiff Whitlatch is similarly situated to
other crew leaders.[10]

In so concluding, the Court notes that plaintiffs ask "this Court
to hold its decision in abeyance on the crew leader class until
Plaintiffs have an opportunity to conduct discovery."  *Plaintiffs'*

---

[10]For the reasons discussed *supra*, the Court will not consider
Paragraphs 5 and 6 of the *Whitlatch Affidavit*, which purported to address the
duties and overtime work of other crew leaders.

*Reply in Support of Motion to Conditionally Certify the Case As a Collective Action*, Doc. No. 15, p. 15 ("*Reply in Support of Motion to Conditionally Certify*").  Plaintiffs' request, which is buried in the middle of a brief, is essentially a motion for discovery.  Plaintiffs base their motion for discovery on the apparent belief that, should the Court disregard Paragraphs 5 and 6 of the *Whitlatch Affidavit*, the Court then has "elect[ed] not to follow the line of cases holding such [hearsay] statements are properly considerable at this juncture in the litigation and instead impose[s] some heightened evidentiary requirement, such as that imposed by Rule 56 of the Federal Rules of Civil Procedure[.]"  *Reply in Support of Motion to Conditionally Certify*, p. 15.  The Court rejects plaintiffs' argument in this regard.  Plaintiffs' request to hold in abeyance the issue of certification, as it relates to the crew leader class, pending discovery is without merit.

> **b.   Comp time class**

As noted *supra*, the FLSA prohibits employers from requiring employees to work more than forty hours per workweek unless those employees receive overtime compensation of at least one-and-one half times their regular pay.  *Ellington*, 689 F.3d at 552.  However, the FLSA also permits public agencies to grant compensatory time off at a rate of not less than one and one-half hours for each hour of overtime worked in lieu of cash overtime compensation.  *See* 29 U.S.C. § 207 (o) (1); *Aiken v. City of Memphis*, 190 F.3d 753, 756 (6th Cir. 1999).  *See also Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 917 (6th Cir. 2004) ("Section 207(o) of the FLSA was enacted in 1985 as part of congressional amendments to address the financial hardships that the

23

FLSA imposed upon states and their political subdivisions.").

In the case presently before the Court, plaintiffs argue that Section 207(o) permits only public employers to use compensatory time; because Claypool Electric is a private employer, plaintiffs contend, it cannot utilize the compensatory time provision of the statute. *See*, *e.g.*, *Reply in Support of Motion to Conditionally Certify*, pp. 15-16. Plaintiffs seek to conditionally certify a class of employees who "were paid in 'comp time,' i.e., received paid time off, in lieu of being compensated for each and every hour worked in excess of 40 hours per workweek at one and one-half times his regular rate of pay [("comp time class").]" *Complaint*, ¶ 20. In attempting to make the required modest factual showing that plaintiffs are similarly situated to such potential class members, plaintiffs offer the *Whitlatch Affidavit* and the *Cox Affidavit*. Both plaintiffs Whitlatch and Cox aver that, while working for Claypool Electric on two projects, they wee required to accept compensatory time at the rate of one-to-one instead of being compensated at one and one-half times their regular rate of pay. *Whitlatch Affidavit*, ¶¶ 2-3, 8-10; *Cox Affidavit*, ¶¶ 2-5. More specifically, plaintiff Whitlatch[11] avers that, while working on the River Valley Stadium Project, Claypool Electric required him to work over 40 hours in a workweek, but gave him compensatory time instead of legal tender. *Whitlatch Affidavit*, ¶¶ 7-9. According to plaintiff Whitlatch, his project manager on the River Valley Stadium Project advised him that Claypool Electric was eliminating all

---

[11]Plaintiff Whitlatch "was employed by Defendants originally as a journeyman electrician construction worker and then as a crew leader/foreman construction worker." *Whitlatch Affidavit*, ¶ 1.

overtime payments.  *Id*. at ¶ 7.  In total, plaintiff Whitlatch avers that he worked approximately 20 hours of overtime, but was permitted to take only approximately 12 hours of paid time off, paid at straight time.  *Id*. at ¶ 10.  Plaintiff Whitlatch also avers that he knows that Claypool Electric required 3 or 4 other employees working on the same project to accept compensatory time in lieu of payment in legal tender for overtime hours.  *Id*. at ¶ 11.

Similarly, plaintiff Cox[12] avers that, while working on the South Gallia High School Athletic Complex Project, his project manager advised him that "Claypool was eliminating any and all overtime payments for work."  *Id*. at ¶ 2.  Nevertheless, plaintiff Cox avers, he "was required to work hours in excess of 40 hours per workweek, but was not compensated in legal tender for that time" and instead worked for compensatory time.  *Id*. at ¶¶ 3-4.  In total, plaintiff Cox avers that he worked approximately 5 hours of overtime, receiving only 3 hours of paid time off.  *Id*. at ¶ 5.  Plaintiff Cox also avers that he knows that Claypool Electric required at least one other employee[13] on the South Gallia High School Athletic Complex Project to work in excess of 40 hours per workweek and required that employee to accept compensatory time in lieu of legal tender for those overtime hours. *Id*. at ¶ 6.

However, although plaintiffs Whitlatch and Cox offer evidence of

---

[12]Plaintiff Cox "was employed by Defendants as an apprentice electrician construction worker for several years until [he] was laid off in or about December 2011." *Cox Affidavit*, ¶ 1.

[13]Plaintiff Cox actually avers that he knows of "at least *one* other *employees*" who worked on the same project and "*were* required" to work overtime and "*were* required to accept compensatory time[.]" *Id*. at ¶ 6 (emphasis added).  The Court will assume that this confusing statement refers to only one employee.

Claypool Electric's alleged failure to compensate them and 4-5 unidentified individuals in legal tender for overtime hours, the Court is not persuaded that plaintiffs have demonstrated the existence of a widespread discriminatory plan.  For example, plaintiff Whitlatch and Cox identify overtime irregularities at two different job sites, but it is undisputed that both the River Valley Stadium Project and the South Gallia High School Athletic Complex Project were part of the same project and were handled by the same project leader.  *Affidavit of Greg Davis*, ¶ 5 ("*Davis Affidavit*"), attached to *Defendants' Memorandum in Opposition to Plaintiffs' Motion to Conditionally Certify the Case as a Collective Action*, Doc. No. 14 ("*Memo. in Opp. to Motion to Conditionally Certify*").  Defendants also offer uncontroverted evidence that Claypool Electric has, on average, forty different work sites that are supervised by between eight and eleven project managers.  *Id.* at ¶ 4.  Against this backdrop, the Court is not convinced that, even under the lenient conditional certification standard, the alleged actions of one project manager at two work sites evidence a widespread discriminatory policy by Claypool Electric.

Similarly, the alleged number of affected employees (two plaintiffs plus four or five unidentified employees) and actual hours of disputed overtime (20 hours alleged by plaintiff Whitlatch and 5 hours alleged by plaintiff Cox) do little to suggest a widespread discriminatory policy. For example, although there may be seven employees affected by an impermissible overtime issue, plaintiffs do not explain or provide evidence that this number constitutes even a moderate showing of a common policy.  Instead, the uncontroverted evidence establishes that seven employees represents, at most,

approximately five percent of at least 140 electricians employed by defendants. *See Davis Affidavit*, ¶ 4.[14] At least one other court has held that a similarly low percentage was insufficient to warrant finding a common policy at even the lenient conditional certification stage. *See Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (finding that four percent of a defendant's work force "is not even a 'modest factual showing' of a common policy or plan, as that term has been used in other cases"). This low percentage, combined with the fact that plaintiffs offer no affidavits from potential plaintiffs, *see Heaps*, 2011 U.S. Dist. LEXIS 40089, at *6, militates against a finding of a widespread common policy.

Finally, plaintiffs have not persuaded the Court that the putative comp time class is a "manageable class." *Lewis*, 789 F. Supp. 2d at 868. For example, the Court is troubled by plaintiffs' expansive definition of this putative class. *See Complaint*, ¶ 20. Specifically, plaintiffs ask this Court to conditionally certify a class of "[a]ll current and former Claypool Electric, Inc. employees" who received paid time off in lieu of monetary compensation at the rate of one and one-half times that employee's regular rate of pay. *Id*. Stated differently, this class definition suggests no boundaries

---

[14]The record suggests that this percentage may actually be lower than five percent. For example, the putative comp time class is not limited by title, *i.e.*, the class encompasses all sorts of Claypool Electric employees. *See Complaint*, ¶ 13 (alleging that Claypool retains employees who perform construction and clerical work), ¶ 20 (defining putative comp time class). Although plaintiffs offer no evidence as to the actual size of this putative class, defendants provide uncontroverted evidence that Claypool Electric employs "more than 140 electricians." *Davis Affidavit*, ¶ 4. Construing this information as a whole, the total number of employees presumably exceeds the 140 electricians identified by defendants.

and is unlimited in time[15] and job title and includes former and current employees; in short, there is no indication that it is a manageable class.  Although plaintiffs argue that the Court "is empowered to re-shape the classes to an acceptable breadth" if it does not approve of the classes as alleged, *Reply in Support of Motion to Conditionally Certify*, pp. 18-19, plaintiffs provide no guidance as to what would be a manageable comp time class in this case.  In sum, the Court cannot conclude that plaintiffs have made even a modest factual showing sufficient to establish that conditional certification of the comp time class is warranted.[16]

### c.   Weighted Average Class

According to plaintiffs, Claypool Electric, when compensating employees for overtime work, must pay employees the weighted average of pay rates when an employee works at two or more nonovertime rates of pay during a single workweek.  *See*, *e.g.*, *Complaint*, ¶¶ 49-52 (citing, *inter alia*, 29 C.F.R. § 778.115, which addresses "[e]mployees working at two or more rates").  In this case, plaintiffs seek to conditionally certify a class of "[a]ll current and former Claypool Electric, Inc. employees whose overtime rate of pay was not calculated by using the weighted average of all hourly rates paid in one workweek [("weighted average class").]"  *Complaint*, ¶ 20.  In attempting to

---

[15]Defendants suggest that, in the event of conditional certification, the Court limit the statute of limitations to two years.  *Memo. in Opp. to Motion to Conditionally Certify*, pp. 16-18.

[16]In so concluding, the Court need not, and does not, address additional evidence offered by defendants that purports to refute plaintiffs' evidence. *See*, *e.g.*, *Davis Affidavit*, ¶ 6 and *Exhibit C* attached thereto. *See also Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 280 (D. Minn. 1991) ("The fact that [plaintiffs'] allegations are disputed by defendants does not mean that plaintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist.").

make the necessary modest factual showing, plaintiffs offer the
*Rutledge Affidavit*.  This evidence, however, suffers from the same
defect as did the *Whitlatch Affidavit* in connection with the
sufficiency of the evidence as to the crew leader class.  More
specifically, plaintiff Rutledge offers evidence that he occasionally
worked in excess of forty hours per week at different rates of pay,
but he was paid at a lower private-hour wage rate rather than at the
weighted average of his higher public-hour wage rate and private-hour
rate.  *Rutledge Affidavit*, ¶¶ 3-9.[17]  However, plaintiff offers no
evidence that there exists other similarly situated employees who were
not paid a weighted average of all hourly rates paid in one workweek.
Accordingly, plaintiffs have not made even a modest factual showing
that plaintiff Rutledge is similarly situated to other employees.
Under these circumstances, conditional certification of the weighted
average class is not appropriate.

### 2.  Discovery and notice

In the absence of conditional class certification, plaintiffs'
request for production of addresses of potential collective action
members, *Motion to Conditionally Certify*, pp. 17-18, and request for
approval of proposed notice to the classes, *id.* at 18, will not be
addressed.

### III.  *PLAINTIFFS' MOTION TO TOLL*

Similarly, and in light of the recommendation that the *Motion to
Conditionally Certify* be denied, *Plaintiffs' Motion to Toll* is
likewise moot and will not be addressed.

---

[17]As discussed *supra*, the Court has considered the portion of Paragraph
3 of the *Rutledge Affidavit* that pertains to plaintiff Rutledge.

**WHEREUPON**, it is **RECOMMENDED** that plaintiffs' *Motion to Conditionally Certify the Case as a Collective Action*, Doc. No. 8, be **DENIED**.  It is **FURTHER RECOMMENDED** that *Defendants' Motion to Strike Certain Paragraphs of Plaintiffs' Affidavits*, Doc. No. 13, be **GRANTED in part and DENIED in part**.  Specifically, it is **RECOMMENDED** that the motion be **GRANTED** as to Paragraphs 5 and 6 of the *Whitlatch Affidavit*; **GRANTED** as to Paragraph 3 of the *Rutledge Affidavit* to the extent that it refers to other employees and to Paragraph 10 of the *Rutledge Affidavit*; but **DENIED** as to Paragraph 11 of the *Whitlatch Affidavit* and as to Paragraph 6 of the *Cox Affidavit*.

Finally, it is **RECOMMENDED** that plaintiffs' *Motion for an Order Equitably Tolling the FLSA Statute of Limitations for Potential Opt-In Plaintiffs*, Doc. No. 25, be **DENIED as moot**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation*

30

*of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

December 17, 2012                          *s/Norah McCann King*
                                    Norah M<sup>c</sup>Cann King
                                United States Magistrate Judge